## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 20- 22485-Civ-Cooke/Goodman

| | |
|---|---|
| STEVEN J. TYMAN, individually and on behalf<br>Of all other similarly situated, | ) <br> ) <br> ) |
|     Plaintiff, | ) <br> ) |
| v. | ) <br> ) |
| FORD MOTOR COMPANY and LORENZO<br>ENTERPRISES CORP. d/b/a LORENZO FORD | ) <br> ) <br> ) |
|     Defendants. | ) |

---

### DEFENDANT, LORENZO ENTERPRISES CORP. d/b/a LORENZO FORD'S, MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND/OR MOTION TO STAY COUNT III OF PLAINTIFF'S COMPLAINT UNTIL COMPLIANCE WITH CONDITIONS PRECEDENT UNDER CHAPTER 501, FLA. STAT., AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Defendant, Lorenzo Enterprises Corp. d/b/a Lorenzo Ford (hereafter "Lorenzo Ford" or "Defendant"), hereby moves this Honorable Court to enter an order compelling Plaintiff, Steven J. Tyman ("Mr. Tyman") to submit to binding arbitration all of his claims against Lorenzo Ford plead in Plaintiff's Complaint (*Dkt. 1*). Defendant also moves the Court for an order staying the proceedings as to Count III of Plaintiff's Complaint until Plaintiff complies with statutory conditions precedent to initiate suit against Defendant under Section 501.98, Fla. Stat. In support, Defendant includes the below incorporated memorandum of law, stating:

### Introduction

Pursuant to applicable Federal and Florida law, Plaintiff's, Steven J. Tyman, claims must be arbitrated and not litigated in court, because the Plaintiff entered into an enforceable arbitration agreement as part of the transaction with Lorenzo Ford. All of Plaintiff's claims against Lorenzo Ford derive from a vehicle lease transaction that occurred on October 19th and 20th, 2019, which was consummated by a Florida Motor Vehicle Lease Agreement and Retail Lease Order executed by the parties. Both contracts include an express agreement to

arbitrate disputes between the parties. Plaintiff also agreed to waive his right to participate as a class representative or a class member in any class claim. Since a valid written agreement to arbitrate exists, the claims concern arbitrable issues, and arbitration has not been waived, enforcement of the arbitration agreement is required as a matter of law. For these reasons and the reasons explained below, this Court must compel arbitration and stay all proceedings pending the final outcome of arbitration.

## Factual and Procedural Background

On or about October 19th and 20th, 2019, Plaintiff presented to Lorenzo Ford in Homestead, Florida where he leased a new model year 2020 Ford Explorer. *Dkt. 1, ¶ 34.* Plaintiff brings four causes of action against Lorenzo Ford (violation of the Florida Deceptive and Unfair Trade Practices Act, "FDUPTA" [Count III], Fraud/Fraudulent Concealment [Count IV], Negligence [Count V], and Negligent Misrepresentation [Count VI]), all of which concern the allegation that Lorenzo Ford intentionally and/or negligently misrepresented to Plaintiff (and Ford Motor Company) that it performed required recall service to the Plaintiff's vehicle prior to the lease, when it had not.[1] *Dkt. 1, ¶¶* 71, 73, 74, 77, 78, 82-84, 90-92.

Mr. Tyman alleges that he suffered damages when he leased the new motor vehicle from Lorenzo Ford, relied on Lorenzo Ford's misrepresentations or omissions related to the condition of the vehicle and the performance of recall work, and decided to lease a vehicle he "would not have leased" or "would have paid less [for]" had he known he would be responsible for paying for the recall work. *Dkt. 1, ¶¶* 71, 73, 74, 77, 78, 82-84, 90-92.

## The Parties Agreement to Arbitrate Disputes

It is undisputed that Mr. Tyman and Lorenzo Ford (the "Parties") executed a Retail Lease Order and a Florida Motor Vehicle Lease Agreement (hereafter "MVLA") to lease the new 2020 Ford Explorer. As is customary in the lease or purchase of vehicles across the country, the parties executed a Retail Lease Order which consummates the customer's agreement to lease the vehicle from the dealer and the parties' also executed a MVLA which concerns their agreement related to the financing of the lease (in this case through Ford Motor Credit Company). Both contracts are executed, along with various other documents, as part

---

[1] Plaintiff's Complaint brings two class action causes of action against Ford Motor Company (Count I and II) and four individual claims against Lorenzo Ford (Count III – IV). *Dkt. 1.* If Plaintiff asserts that Count I and II are also against Lorenzo Ford, these claims also require arbitration.

of the lease transaction. A true and correct copy of the MVLA is attached to the Declaration of Miguel Ranilla as Exhibit 1(A). *See Exhibit 1: Decla. of M. Ranilla.* A true and correct copy of the Retail Lease Order is attached to the Declaration of Miguel Ranilla as Exhibit (1)B.[2] *Id.* The MVLA was executed via e-signature by Mr. Tyman and expressly included the arbitration provision below:

## READ THIS ARBITRATION PROVISION CAREFULLY AND IN ITS ENTIRETY
## ARBITRATION

Arbitration is a method of resolving any claim, dispute, or controversy (collectively, a "Claim") without filing a lawsuit in court. Either you or Lessor/ Finance Company/Holder ("us" or "we") (each, a "Party") may choose at any time, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration. Neither party waives the right to arbitrate by first filing suit in a court of law. Claims include but are not limited to the following: 1) Claims in contract, tort, regulatory or otherwise; 2) Claims regarding the interpretation, scope, or validity of this provision, or arbitrability of any issue except for class certification; 3) Claims between you and us, our employees, agents, successors, assigns, subsidiaries, or affiliates; 4) Claims arising out of or relating to your application for credit, this contract, or any resulting transaction or relationship, including that with the dealer, or any such relationship with third parties who do not sign this contract.

**RIGHTS YOU AND WE AGREE TO GIVE UP:**
If either you or we choose to arbitrate a Claim, then you and we agree to waive the following rights:

- **RIGHT TO A TRIAL, WHETHER BY A JUDGE OR JURY**
- **RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR A CLASS MEMBER IN ANY CLASS CLAIM YOU MAY HAVE AGAINST US WHETHER IN COURT OR IN ARBITRATION**
- **BROAD RIGHTS TO DISCOVERY AS ARE AVAILABLE IN A LAWSUIT**
- **RIGHT TO APPEAL THE DECISION OF AN ARBITRATOR**
- **OTHER RIGHTS THAT ARE AVAILABLE IN A LAWSUIT**

**RIGHTS YOU AND WE DO NOT GIVE UP:** If a Claim is arbitrated, you and we will continue to have the following rights, without waiving this arbitration provision as to any Claim: 1) Right to file bankruptcy in court; 2) Right to enforce the ownership interest in the vehicle, whether by repossession or through a court of law; 3) Right to take legal action to enforce the arbitrator's decision; 4) Right to request that a court of law review whether the arbitrator exceeded its authority; and 5) Right to seek remedies in small claims court for disputes or claims within that court's jurisdiction.

You or we may choose the American Arbitration Association, (www.adr.org), or any other organization subject to our approval, to conduct the arbitration. The applicable rules (the "Rules") may be obtained from the selected organization. If there is a conflict between the Rules and this contract, this contract shall govern. This contract is subject to the Federal Arbitration Act (9 U.S.C. § 1 et seq.). The arbitration decision shall be in writing with a supporting opinion. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. To the extent that the total of your filing, administration, service or case management fee and your arbitrator or hearing fee exceeds $200, we will pay the amount in excess of $200, unless you choose to pay one-half of the total or unless the fees are reallocated in the award under applicable law or the organization's rules.

Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. Any portion of this arbitration provision that is unenforceable shall be severed, and the remaining provisions shall be enforced. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this arbitration provision shall be unenforceable. The validity and scope of the waiver of class action rights shall be decided by the court and not by the arbitrator.

The MVLA further stated on the page for Mr. Tyman's signature: "YOU ACKNOWLEDGE THAT YOU HAVE READ AND AGREE TO BE BOUND BY THE ARBITRATION PROVISION IN THIS CONTRACT." *See Ex. 1: Decla. of M. Ranilla, ex. A,*

---

[2] While Plaintiff's Complaint does not attach the Florida Motor Vehicle Lease Agreement or Retail Lease Order, applicable caselaw is clear that consideration of relevant materials outside of the "four corners of the complaint" is entirely appropriate where a party brings a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. *Mamani v. Sanchez Berzain,* 636 F. Supp. 2d 1326, 1329 (S.D. Fla. 2009); *See Garcia v. Kendall Lakes Automotive, LLC,* 2019 WL 1359475 (S.D. FL 2019) ("Accordingly, in ruling on a motion to compel arbitration, the Court may consider matters outside of the four corners of the complaint"). The Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Id.*

*pg. 8 of 8.*  The MVLA's arbitration provision also expressly states: "[t]his contract is subject to the Federal Arbitration Act (9 U.S.C. § 1, et seq.)." *Id.*

The Retail Lease Order included a substantively equivalent provision below:



*See Ex 1: Decla. of M. Ranilla, ex. B, pg. 4.*  The Retail Lease Order was also executed by the parties and next to Mr. Tyman's signature is the acknowledgment: "You have read each page of this Order and Agreement, including the arbitration provision on the reverse side, and agree to its terms." *Id.* Under Florida law, when parties to a contract execute two or more documents concurrently in the course of one transaction concerning the same subject matter, as the Parties did here, the documents must be read and construed together. *Dodge City, Inc. v. Byrne*, 693 So. 2d 1033, 1035 (Fla. 2d DCA 1997); *See Morris v. Sheehan Buick Pontiac GMC, Inc.*, 2012 WL 12894289 (S.D. Fla. 2012).

### The Federal Arbitration Act ("FAA")

It is well-settled law that the FAA evinces a liberal federal policy favoring arbitration. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 35 (1991); *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.,* 553 F.3d 1351, 1366 (11th Cir. 2008) (*quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). By enacting the FAA, Congress intended to avoid the unnecessary expense and delay of litigation where parties had provided for the

4

more efficient process of arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). Federal policy, therefore, requires courts to "construe arbitration clauses generously, resolving all doubts in favor of arbitration." *Becker v. Davis*, 491 F.3d 1292, 1305 (11th Cir. 2007).

"By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985); *John B. Goodman Ltd. v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, 9 U.S.C. § 1 et seq., a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute.").

Under the FAA, "parties [to an arbitration agreement] are generally free to structure their arbitration agreements as they see fit." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989). State laws that stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the FAA are preempted. *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1745 (2011).

Although the FAA governs the applicability of arbitration agreements, state law governs issues "concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, 492 n.9, 107 S. Ct. 2520, 96 L.Ed.2d 426 (1987); *See Smart v. Bob Wilson Dodge Inc.*, 2006 WL 1037113 (M.D. Fla. 2006)("It is now an axiom of federal and Florida law that written agreements to arbitrate are binding and enforceable, and that in the absence of waiver a court must compel arbitration when an arbitration agreement and an arbitrable issue exist").

### All Requirements for Ordering Arbitration Have Been Met

When presented with a motion to compel arbitration in Florida, a district court is tasked to consider three factors: (1) whether a valid agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived. *Nat'l Auto Lenders Inc. v. Sys Locate, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla.2010) (citation omitted); s*ee also, Seifert v. U.S. Home Corp.,* 750 So. 2d 633 (Fla. 1999)) ("Under both federal and Florida law, there are three factors for the court to consider in determining a party's right to arbitrate: (1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived.").

Here, all three factors are clearly satisfied, and Plaintiff's claims against Lorenzo Ford should be compelled to arbitration.

### 1.    A Valid Agreement to Arbitrate Exists Between the Parties

It cannot be disputed that the parties entered a MVLA which included the agreement to arbitrate shown above. *See Ex. 1: Decla. of M. Ranilla, ex. A, pg. 7 of 8.*   It also cannot be disputed that the parties executed the Retail Lease Order. *See Ex. 1: Decla. of M. Ranilla, ex. B.* While Plaintiff's Complaint does not attach the MVLA or Retail Lease Order, the Complaint makes clear that Mr. Tyman leased a new model Ford Explorer from Lorenzo Ford on or about October 19th and 20th, 2019. *See Dkt. 1, ¶ 10.*   In doing so, the parties' executed the MVLA and Retail Lease Order.

The e-signature on the MVLA does not make the contract any less enforceable. In 1996, Florida enacted the "Electronic Signature Act" which specifically provides that "[u]nless otherwise prohibited by law, an electronic signature may be used to sign a writing and shall have the same force and effect as a written signature," § 668.004, Fla. Stat. (2003). Thus, there is no basis to dispute the legitimacy of the MVLA. *See CEFCO v. Odom,* 278 So. 3d 347 (Fla. 1st DCA 2019) (compelling arbitration for a contract executed electronically and stating succinctly "[e]lectronic signatures are valid"); *See also Haire v. Fla. Dep't of Agric. & Consumer Servs.*, 870 So. 2d 774, 789 (Fla. 2004).[3]

Second, by executing the documents, Plaintiff is unable to claim that he did not otherwise agree to arbitrate his claims with Defendant.  Under Florida law, a party who signs an instrument is presumed to know its contents. *Benoay v. E.F. Hutton & Co., Inc.,* 699 F. Supp. 1523, 1529 (S.D. Fla. 1988) (analyzing Florida law). That party "cannot avoid his obligations thereunder by alleging that he did not read the contract, or that the terms were not explained to him, or that he did not understand the provisions." *Id.; see also Linville v. Ginn Real Estate Co., LLC,* 697 F. Supp. 2d 1302, 1308-09 (M.D. Fla. 2010). Courts considering similar Florida motor vehicle sale contracts have consistently concluded that a customer who executed the contract could not avoid an obligation to arbitrate by alleging they simply did not read or understand the provision. *See Falcon v. Carmax,* 2018 WL 3699336 (S.D. Fla. 2018) (Report and Recommendation adopted at 2018 WL 3696742); *Murphy v. Courtesy Ford, LLC*, 944 So.

---

[3] In fact, no signature is required to satisfy the FAA's written agreement requirement. *BDO Seidman, LLP v. Bee*, 970 So. 2d 869, 874 (Fla. 4th DCA 2007)

2d 1131, 1134 (Fla. 3d DCA 2006).

Consequently, the first factor (a valid agreement to arbitrate) has been established.

**The Arbitration Provision is Not Procedurally or Substantively Unconscionable**

Once it has been determined that an agreement to arbitrate exists between the parties, it is possible for the provision to nevertheless be determined to be unenforceable because it is "unconscionable." Here, the arbitration agreement is not unconscionable as binding caselaw has already made clear that arbitration provisions related to the purchase of a motor vehicle nearly identical to the MVLA and Retail Lease Order in this case, are not unconscionable. *See Falcon,* 2018 WL 3699336. Nevertheless, Defendant provides the applicable tests below.

To find a contract unconscionable under Florida law, a party must establish that the contract is <u>both</u> procedurally and substantively unconscionable. *Golden v. Mobil Oil Corp.*, 882 F.2d 490, 493 (11th Cir. 1989). The party seeking to avoid the arbitration provision has the burden to establish unconscionability. *Murphy*, 944 So. 2d at *1134.

**a. Procedural Unconscionability**

In *Falcon*, this District considered a substantively identical arbitration provision which was included in a contract for the purchase of a motor vehicle and included a waiver of the plaintiff's right to participate in a class action. 2018 WL 3699336 at *1. This Court concluded that enforcement of the provision was permitted (and not procedurally unconscionable) notwithstanding the Plaintiff's allegations that it was an adhesion contract and that he was "rushed" through his review of the documents. *Id.* at *4. This Court reasoned that the contract was not an adhesion contract because the customer maintained the ability to walk away from the dealership and that the review of the documents was a responsibility of the purchaser in deciding to executed the agreement, not one that was invalid because he was "rushed." *Id.* at *5. Other Florida courts have made identical decisions. *See e.g., Murphy*, 944 So. 2d at 1134 (finding arbitration agreement procedurally consciable even though the car dealership that drafted the agreement testified "that it was not their practice to inform customers of terms on the back or of the arbitration provision, and they did not inform the buyer of these terms."); *See also Garcia,* 2019 WL 1359475 at *6.

**b. Substantive Unconscionability**

The court in *Falcon* also explained that the arbitration provision was substantively consciable despite its inclusion of a class action waiver provision based on the United States

Supreme Court's precedent in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011), which found that any state law prohibition on the inclusion of a class action waiver within the terms of an arbitration provision "interferes with the fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Falcon,* 2018 WL 3699336 at *5 (*quoting Concepcion,* 563 U.S. at 344); *See Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1212-13 (11th Cir. 2011) ("[T]o the extent that Florida law would be sympathetic to the Plaintiffs' arguments here, and would invalidate the class waiver simply because the claims are of small value, the potential claims are numerous, and many consumers might not know about or pursue their potential claims absent class procedures, such a state policy stands as an obstacle to the FAA's objective of enforcing arbitration agreements to their terms, and is preempted").

This District in *Falcon* reasoned that since the arbitration provision authorized the arbitrator to award "all individual remedies permitted by the substantive law that would apply" there was no other basis for the plaintiff to assert that the arbitration provision was substantively unconscionable. *Falcon,* 2018 WL 3699336 at *6. The court additionally acknowledged that claims brought under FDUTPA "have regularly been referred to arbitration." *Id.; See e.g. Cruz*, 648 F.3d at 1216 (enforcing arbitration clause that involved FDUTPA claim); *See Murphy*, 944 So. 2d at 1133; *See Beazer Homes Corp. v. Bailey*, 940 So. 2d 453, 461 (Fla. 5th DCA 2006).

The issue here is identical to the situation this District ruled on, and referred to arbitration, in *Falcon. See* 2018 WL 3699336 at *7. Mr. Tyman is unable to claim that he did not agree to arbitration or that the terms were withheld from him. Likewise, Mr. Tyman retains all of the individual remedies under substantive law. Since the parties' agreement to arbitrate was not procedurally unconscionable, it is a valid arbitration agreement under Florida law and any substantive unconscionability need not be considered. *Id.*

Even if the parties' agreement to the arbitration provision was determined to be procedurally unconscionable, the agreement would still be valid as it is substantively conscionable.

The arbitration provision in this case includes a class action waiver but the United States Supreme Court has foreclosed any argument that this is unconscionable.[4] *See*

---

[4] The Complaint does not bring class action claims against Lorenzo Ford, so it is not clear that this analysis is even necessary. Nevertheless, binding caselaw is clear that this would not be a basis to rule arbitration

*Concepcion*, 563 U.S. at 352 (ruling that a state whose public policy found waiver of class action rights unconscionable, as preempted by the FAA).  The 11th Circuit and Florida Supreme Court have both acknowledged the application of *Concepcion* to foreclose any legal argument that a class action waiver makes arbitration unenforceable. *See e.g. Cruz,* 648 F.3d at 1205*; See McKenzie Check Advance of Florida, LLC v. Betts,* 112 So. 3d 1176, 1180 (Fla. 2013).

Besides the class action waiver, the MVLA's arbitration provision is exactly like the one in *Falcon* which was determined to be valid and enforceable. 2018 WL 3699336 at *7. The Parties' arbitration provisions do <u>not</u> limit Mr. Tyman's individual remedies, his ability to recover attorney's fees permitted by applicable law, and does not impose unreasonable costs. *See Ex. 1: Decla. of M. Ranilla, ex. A & B.*  There is no basis in law or fact for the Court to hold that the agreement to arbitrate is not valid.

## 2.    Plaintiff's Claims against Lorenzo Ford are Arbitrable Issues

An order compelling arbitration is further required as the Parties' entered a valid arbitration agreement and Plaintiff's Complaint brings arbitrable issues under the arbitration provision. Each of Plaintiff's claims against Lorenzo Ford arises from the parties' unique contractual relationship, thus the claims are arbitrable issues under the Parties agreement. This District has already examined a similar arbitration provision and determined that claims related to the condition of a vehicle purchased from a dealership were arbitrable. *See e.g. Falcon*, 2018 WL 3699336 at *1 (compelling arbitration of claims of FDUTPA and negligence brought against a motor vehicle dealership).

"[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims as issue" *Garcia,* 2019 WL 1359475 at *3 (*citing Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)).  All doubts regarding the scope of an arbitration agreement must be resolved in favor of arbitration. *Qubty v. Nagda,* 817 So.2d 952, 956 (Fla. 5th DCA 2002).

### The Arbitration Provision is Broad in Scope

The MVLA's arbitration provision states from the very beginning that arbitration is a method of "resolving any claim, dispute, or controversy." *See Ex. 1: Decla. of M. Ranilla, ex. A, pg. 7 of 8.*  It states that the parties "may choose at any time, including after a lawsuit is filed,

---

unenforceable.

to have any Claim *related to this contract* decided by arbitration." *Id.* (emphasis added).

"Claims include but are not limited to the following: 1) Claims *in contract, tort, regulatory or otherwise;* 2) Claims regarding the interpretation, scope, or validity of this provision, or arbitrability of any issue except for class certification; 3) Claims between you and us, our employees, agents, successors, assigns, subsidiaries, or affiliates; 4) Claims *arising out of or relating to* your application for credit, *this contract, or any resulting transaction or relationship,* including that with the dealer, or any such relationship with third parties who do not sign this contract." *Id.* (emphasis added).

The Retail Lease Order is identical in its scope. *See Ex. 1: Decla. of M. Ranilla, ex. B, pg. 4.* It states that "any claims or dispute, whether in contract, tort, statute or otherwise…between you and us…, which *arises out of or related to* your credit application, purchase or condition of this Vehicle, this Order and Agreement or any resulting transaction or relationship… shall… be resolved by neutral, binding arbitration." *Id.* While equally broad in its scope, the provision specifically acknowledges that disputes related to the "condition" of the vehicle are within the scope of arbitration. *Id.*

The 11th Circuit has expressly recognized Florida law differentiates between clauses which agree to arbitrate claims only "arising from" the contract and provisions which more broadly agree to arbitrate claims "arising from *and related to*" the contract.

> In analyzing the scope of an arbitration clause, Florida courts draw a distinction between clauses that require arbitration of claims "arising out of" the subject contract and those that require arbitration of claims "arising out of or relating to" the contract. *See Jackson v. Shakespeare Found., Inc.,* 108 So.3d 587, 593 (Fla. 2013) (emphasis in original). The former are considered to be "narrow in scope" and apply only to "those claims that have a direct relationship to a contract's terms and provisions." *Id*. **The latter are considered to be "broad in scope" and apply to "claims that are described as having a 'significant relationship' to the contract—regardless of whether the claim is founded in tort or contract law**." *Id*. (*quoting Seifert v. U.S. Home Corp.*, 750 So.2d 633, 637–38 (Fla. 1999)).

*Leidel v. Coinbase, Inc.*, 729 Fed. Appx. 883, 887 (11th Cir. 2018)

The arbitration agreement between Plaintiff and Lorenzo Ford is facially in the "broad in scope" camp. *See Ex. 1: Decla. of M. Ranilla, ex. A, pg. 7 of 8* ("Claims include but are not limited to the following: 1) Claims in contract, tort, regulatory or otherwise;... 4) Claims arising out of or relating to … this contract, or any resulting transaction or relationship"); *Id.,*

*Ex. B, pg. 4* ("any claims or dispute, whether in contract, tort, statute or otherwise…between you and us…, which arises out of or related to your credit application, purchase or condition of this Vehicle, this Order and Agreement or any resulting transaction or relationship"). Thus, the Plaintiff's claims are arbitrable if there is a contractual nexus or relationship between the claims and the contract.

**A Contractual Nexus Exists Between the**
**MVLA and Retail Lease Order and each of Plaintiff's Claims against Lorenzo Ford**

A review of Plaintiff's Complaint shows that each of Plaintiff's claims against Lorenzo Ford arise from the parties' unique contractual relationship, thus the claims are arbitrable issues under the Parties agreement.

To determine if a particular claim is within the scope of the arbitration provision depends on the existence of some nexus between the dispute and the contract containing the arbitration clause. *Vivas v. Safra National Bank of New York*, 2010 WL 11602462 (S.D. Fla. 2010). Meaning, the claims must be the type of claims the parties agreed to arbitrate. The test to determine whether a significant relationship or nexus exists has been summarized as follows:

> "[A] significant relationship is described to exist between an arbitration provision and a claim if there is a "contractual nexus" between the claim and the contract. A contractual nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract. **More specifically, a claim has a nexus to a contract and arises from the terms of the contract if it emanates from an inimitable duty created by the parties' unique contractual relationship.** In contrast, a claim does not have a nexus to a contract **if it pertains to the breach of a duty otherwise imposed by law or in recognition of public policy, such as a duty under the general common law owed not only to the contracting parties but also to third parties and the public.**

*Jackson,* 108 So.3d at 593 (internal citations omitted).

While a "significant relationship" does not exist merely because the parties in the dispute have a contractual relationship, *Id.* at *593*, it does exist where the claims are inextricably intertwined with both the circumstances that surrounded the transaction from which the contract emanated and the contract itself. *See Newco Energy Acquisitions Holdings, LLC v. Shulgen*, 2013 WL 12149763 (S.D. Fla. 2013). This is regardless if the claims are

brought as a breach cause of action, or instead as a tort. *Stacy David, Inc. v. Consuegra,* 845 So. 2d 303, 305 (Fla. 2d DCA 2003) ("Deciding whether a particular claim is covered by a broad arbitration provision requires a determination of whether a significant relationship exists between the claim and the agreement containing the arbitration clause, regardless of the legal label attached to the dispute").

Where the plaintiff's claims, even tort claims of negligence, arise from a duty deriving from the parties' contractual relationship, the claim is properly arbitrable. *See e.g. Falcon,* 2018 WL 3699336; *See Vivas,* 2010 WL 11602462.

In *Falcon,* a consumer purchased a vehicle from a dealership and brought claims of breach of contract, negligence, and violation of FDUTA, after the vehicle immediately began experiencing mechanical problems during its first day of use. 2018 WL 369936 at *1. The court granted the dealership's motion to compel arbitration as to all of the plaintiff's claims determining that the claims related to the condition of the vehicle and a contractual nexus existed. *Id.* at *7.

In *Vivas v. Safra National Bank of New York*, a family opened a bank account with defendant, a bank, which was substantially depleted due to several high-risk investments by which plaintiffs alleged they did not authorize. 2010 WL 11602462 at *3. The bank attempted to compel the claims to arbitration based on a contract executed by the parties. *Id.* The plaintiffs argued their tort causes of action for fraud, negligent supervision, conversion, and gross negligence were not arbitrable as they were causes of action "not governed by the contract, or imposed by a 'unique relationship' between the parties by virtue of the existence of an underlying contract" and were instead related to "duties that are based in law in furtherance of public policy." *Id.* at *9. This Court rejected this argument reasoning:

> "It is true that the tort causes of action brought by the Plaintiffs reflect considerations of public policy and duties generally owed to others outside of contractual relationships. But the Plaintiffs are incorrect in arguing that the contract in this case did not place the Parties in a "unique relationship." In fact, the Parties would have no relationship if the Plaintiffs had decided against banking with the Defendant. In other words, all the causes of action brought by the Plaintiffs "raise[ ] an issue that requires reference to or construction of some portion of the contract for resolution." *Maguire v. King*, 917 So.2d 263, 266 (Fla. 5th DCA 2005) ("Arbitrability depends on the relationship between the claim and the agreement, not the legal label attached to the dispute."). The contractual relationship between the Parties in this case is not incidental or secondary in importance, but rather it serves as the foundation of their

relationship and the sole reason they are in dispute. As such, the tort claims raised by the Plaintiffs would be "nonsensical when divorced from the contractual obligations [in dispute]." *Id.* at 266.

*Vivas,* 2010 WL 11602462 at *8. [5]

### Plaintiff's Claims Against Lorenzo Ford

A review of Plaintiff's four individual causes of actions against Lorenzo Ford makes clear <u>each</u> are inextricably intertwined to the parties' contracts.   The Plaintiff's claims of a violation of FDUPTA, Fraud/Fraudulent Concealment, Negligence, and Negligent Misrepresentation, all concern the allegation that Lorenzo Ford intentionally and/or negligently misrepresented to Plaintiff that it had performed required recall service to Plaintiff's vehicle prior to the lease, when it had not. *Dkt, 1, ¶¶ 10, 53-56, 77-79, 80-85.* It is this alleged misrepresentation or omission about the condition of the vehicle, as well as misrepresentations allegedly made by Lorenzo Ford to Ford Motor Company that it had done the recall repairs, which are the basis for Plaintiff's general assertion that he did not receive the full value of his bargain with Defendant when he leased the 2020 Ford Explorer. *Id., ¶¶ 55, 73-74, 77, 93.*   This is especially clear as Plaintiff's Complaint culminates by seeking recovery of damages as he "would not have leased the 2020 Ford Explorer, or would have paid less for the vehicle" if not for Defendant's alleged misrepresentations or material omissions. *Id., ¶¶ 73, 74, 77, 93.*

The claims do not represent breach of duties generally owed by Defendant to others besides the contracting parties, but duties that only arose when the parties entered the lease agreement. *Vivas*, 2010 WL 11602462 at *10 ("The contractual relationship between the Parties in this case is not incidental or secondary in importance, but rather it serves as the foundation of their relationship and the sole reason they are in dispute").  Plaintiff seeks recovery of damages for a difference between what he paid and the contract price he would

---

[5] Compare this with a case where the plaintiff brought claims related to duties generally owed by the defendant to anyone, and not arising from a contractual relationship. *Seifert v. U.S. Home Corp.*, 750 So.2d 633 (Fla. 1999) In *Seifert*, a homeowner brought a wrongful death claim against her contractor after an incorrectly installed air conditioning system caused carbon monoxide emissions from a car in the garage to be distributed into the home, killing her husband. 750 So.2d 633 at *634. The Florida Supreme Court determined that the homeowner's wrongful death negligence claims did not have a "contractual nexus" as the particular tort claim against the contractor represented a duty generally owed by the contractor to anyone who entered the home, and did not depend on the existence of the contractual relationship between the parties. *Id.* at *639 ("These allegations rely on obligations that would extend to anyone, third parties as well as the [Homeowners], who might be injured by [defendant's] tortious conduct").

have paid had the dealership not misrepresented the condition of the vehicle. *Id.,* ¶¶ 73, 74, 77, 93. These claims and the damages they seek cannot be divorced from the two parties' unique contractual relationship, thus they are arbitrable. *See Falcon*, 2018 WL 3699336; *See Vivas*, 2010 WL 11602462.

### a. Count III – FDUTPA

A long list of cases reveal that claims brought under FDUTPA have regularly been referred to arbitration. *See generally, Cruz,* 648 F.3d at 1216 (enforcing arbitration clause that involved FDUTPA claim); *Murphy*, 944 So. 2d at 1131("Florida case law is clear that FDUTPA claims can properly be submitted to arbitration."); *Beazer Homes Corp. v. Bailey*, 940 So. 2d 453, 461 (Fla. 5th DCA 2006) ("If the statutory cause of action is based, as in this case, on matters growing out of a contract which covers the dispute, and relies on the same facts as the dispute which is subject to arbitration, there is no basis to exclude the FDUTPA issue from arbitration."); *Simattina Holdings, LLC v. Steri-Clean, Inc.,* 195 F. Supp. 3d 1285, 1291 (S.D. Fla. 2016) ("In any event, the [FDUTPA] claim is arbitrable because whether Defendants made representations or omissions likely to mislead Plaintiff or violated a statute or rule proscribing unfair practices, the causation leading to any damages springs from Plaintiff entering into the Franchise Agreement."); *See also, Falcon,* 2018 WL 3699336.

Count III of Plaintiff's Complaint alleges that Lorenzo Ford violated FDUPTA "by knowingly and intentionally leasing Plaintiff a new motor vehicle with open FSAs that had not been remedied and then falsely reporting that the FSA repairs on the Plaintiff's vehicles had been done." *See Dkt.* 1, ¶ 71.  The claim continues stating:

> 73. The facts concealed or not disclosed… are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease a new vehicle and at what price.  Had Plaintiff known that FSAs on his 2020 Ford Explorer existed and had not been remedied and that he would ultimately be responsible for pay for the FSA repairs, Plaintiff would not have purchased the vehicle, or would have paid less for the vehicle."

*See Dkt. 1*, ¶ 73.

There is no doubt that Plaintiff's claims "emanates from an inimitable duty created by the parties' unique contractual relationship."  *See Jackson,* 108 So.3d at 593.  Lorenzo Ford would certainly have no duty to disclose to Mr. Tyman materials facts about the condition of the new 2020 Ford Explorer, if it was not entering an agreement to lease Mr. Tyman the

vehicle.  Mr. Tyman cannot assert that he would have "paid less for the vehicle" if there was not a higher price derived from MVLA and Retail Lease Order which he agreed to pay before he had knowledge of the allegedly omitted material facts about the condition of the vehicle. *Dkt. 1,* ¶ 73.

Further, while Plaintiff does reference a regulatory requirement related to the performance of recall work, 49 U.S.C. §§ 30112(a), the Complaint correctly notes that the statute prohibits "manufacturers and dealers from <u>selling new</u> any vehicles that contain a safety defect for which a recall was issued." *See Dkt. 1*, ¶ 15. (emphasis added).  Thus, Defendant's alleged "duty" under the statute could only arise if the dealership sold or leased a <u>new</u> motor vehicle. 49 U.S.C. §§ 30112(a).  This fact requires reference to (and consideration of the construction of) the parties' unique MVLA and Retail Lease Order which are the documents which represented to Mr. Tyman that the subject vehicle was "NEW" and that a lease occurred.  *See Ex. 1: Decla. of M. Ranilla, ex. A & B.*

The FDUTPA cause of action is especially reliant on the existence of the parties' contract, as FDUTPA only applies to deceptive or unfair "acts or practices in the conduct of any trade or commerce." *See Dkt. 1,* ¶ 69 (*quoting* Fla. Stat. § 501.202 & 204).  Plaintiff asserts that Lorenzo Ford was engaging in "trade or commerce" by leasing the motor vehicle to Mr. Tyman, thus, it cannot then argue that its claim does not have a nexus to the parties' contract.[6] *Id.* at ¶ 69.  If the dealership was not engaging in trade or commerce during their allegedly improper activities, FDUTPA would not apply. *See Fla. Stat. § 501.204.*

### b. Count IV – Fraud or Fraudulent Concealment

Plaintiff's fraud or fraudulent concealment claim is based on the very same allegations as the FDUTPA claim: that Lorenzo Ford "made material misrepresentations and omissions concerning a presently existing or past fact" when it "leased Plaintiff a new 2020 Ford Explorer with open FSAs without fully or truthfully disclosing to Plaintiff that the FSA's existed and had not been remedied." *See Dkt. 1,* ¶ 77.  Thus, the nexus is the transaction which was consummated by the contract.

---

[6] Fla. Stat. § 501.203(8): "Trade or commerce" means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

The cause of action expressly alleges that "Plaintiff was *fraudulently induced* to lease a 2020 Ford Explorer with open FSAs." *Id.,* ¶ 77 (emphasis added). Multiple Florida cases considering arbitration provisions have concluded that claims of fraudulent inducement necessarily relate to the party's contract. *See Passerrello v. Robert L. Lipton, Inc.,* 690 So.2d 610 (Fla. 4th DCA 1997)("It is well settled, however, that where the entire agreement is alleged to have been fraudulently induced, not the arbitration provision itself, the entire matter is to be resolved by arbitration."); *Berman v. Alamo Rent A Car, Inc.,* 717 So. 2d 165 (Fla. 4th DCA 1998)(holding that employees claims that the employer made false statements that fraudulently induced him to enter into an employment relationship were arbitrable issues); *Maguire v. King*, 917 So.2d 263 (Fla. 5th DCA 2005)("The alleged fraud and misrepresentation on behalf of [defendants] can only be seen as arising out of or relating to the obligations they assumed under their contract with [plaintiff], accordingly, the trial court's order concluding that [plaintiff's] tort claims were not arbitrable was clearly erroneous."); *See also, Great W. Fin. Sec. Corp. v. Grandison*, 701 So.2d 1202, 1203 (Fla. 5th DCA 1997).

In *Stacy David,* 845 So. 2d 303, a consumer brought claims against a dealership related to the condition of a vehicle he purchased including claims under FDUTPA, of fraud, breach of warranty, and negligent misrepresentation after the consumer discovered allegedly undisclosed damage to the vehicle sustain prior to the sale. After the trial court denied a motion to compel arbitration, the Second DCA reversed that decision reasoning that "tort claims based on duties that are dependent upon the existence of a contractual relationship between the parties are normally arbitrable." *Id.* at *306.  It reasoned "the duties under theories such as fraud in the inducement of a contract, fraud in the performance of a contract, or negligent misrepresentation are duties dependent upon the existence of a contract relationship between the parties." *Id.* at *306.

Again, Plaintiff's allegations of fraud by Lorenzo Ford emanates from a duty created by the parties' contractual relationship. In other words, Lorenzo Ford had no duty to disclose material facts about the condition of the vehicle to Mr. Tyman had the parties not entered an agreement whereby Lorenzo Ford leased him the motor vehicle.   Only Mr. Tyman has standing to bring a claim seeking damages related to the allegedly inflated price of the vehicle. This is not a duty or obligation owed by Lorenzo Ford to third parties in general.  Mr. Tyman cannot allege to have been fraudulent induced but for a contract with terms he was allegedly

16

*induced* into accepting.  This cause of action is therefore arbitrable.

### c. Count V – Negligence

Plaintiff's negligence cause of action alleges that "Lorenzo Ford leased Plaintiff a new 2020 Ford Explorer with open FSAs without performing the repairs order by the FSAs in violation of federal law and Ford's policies and procedures.  In addition, Lorenzo Ford closed the FSAs indicating that the FSA repairs had been done when they had not been resulting in Plaintiff becoming responsible for paying for the FSA repairs." *See Dkt. 1,* ¶ 82.  It alleges "Lorenzo Ford **had a duty to** remedy any outstanding FSAs prior to leasing the 2020 Ford Explorer new to Plaintiff in order conform to federal law and Ford's policies and procedures." *Id.,* ¶ 82. (emphasis added).

Identical with the analysis of the prior claims, Plaintiff's negligence claims inarguably arise from a duty that is unique to the parties' contractual relationship. As Plaintiff's Complaint asserts, Lorenzo Ford only had a duty to remedy outstanding FSAs when it chose to lease the 2020 Ford Explorer new to Plaintiff. *See Dkt. 1,* ¶ 82.  Lorenzo Ford leased the vehicle to Plaintiff through the MVLA and Retail Lease Order. *See Ex. 1: Decla. of M. Ranilla, ex. A & B.*  Review and consideration of the terms of the MVLA and Retail Lease Order reveals that the vehicle was leased to Plaintiff, and that it was leased as a "NEW" vehicle. *Id.*  Plaintiff cannot avoid the arbitration agreement simply by ignoring it and alleging facts that it could only prove through a later presentation of the contracts.

This type of negligence claim, while related to considerations of public policy, is not a duty owed to third parties in general, but a claim that cannot be divorced from the parties' lease contract. *See e.g., Falcon,* 2018 WL 3699336*; See Vivas,* 2010 WL 11602462.

### d. Negligent Misrepresentation

Plaintiff's last cause of action against Lorenzo Ford alleges that defendant "failed to use reasonable care when it leased Plaintiff a new 2020 Ford Explorer with open FSAs without performing the repairs ordered by the FSAs in violation of federal law and Ford's policies and procedures." *Dkt. 1,* ¶ 88.  "If not for Defendant, Lorenzo Ford's misrepresentations and materials omissions, Plaintiff would not have leased the 2020 Ford Explorer, or would have paid less for the vehicle." *Dkt. 1,* ¶ 93.

This claim, like the above claims, is arbitrable and courts have ordered just that in similar circumstances.  *See e.g., Stacy David*, 845 So. 2d 303 at 305.  Plaintiff's negligent

misrepresentation claim emanates from a duty created by the parties' contractual relationship; namely, the agreement of Lorenzo Ford to lease a new 2020 Ford Explorer to Plaintiff. *See Ex. 1: Decla. of M. Ranilla, ex. A & B.*  This agreement, the MVLA and Retail lease Order, also contain an agreement that the parties could require disputes to be submitted to arbitration. *Id.* Enforcement of this arbitration agreement is required by law.  Plaintiff cannot seek recovery of damages on the basis that he "would have paid less for the vehicle" if there was not a price that he did pay which is derived only from review of the terms of the MVLA.  *Id.*

### 3. Lorenzo Ford has Not Waived its Right to Arbitrate

Finally, Lorenzo Ford has not waived its right to arbitration.  Defendant moves to compel arbitration in response to being served with Plaintiff's Complaint and has not otherwise attempted to defend the claim using the court.  Plaintiff also has never attempted to arbitrate the claim and had this effort ignored be Defendant. *See Falcon,* 2018 WL 3699336 at *7 (holding plaintiff's argument that dealership waived right to arbitrate by not pre-emptively initiating arbitration was "nonsensical").

### The Court Should Stay This Action Pending the Outcome of Arbitration

Once this Court orders this matter to arbitration, the FAA requires that it stay the instant proceeding. Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, *upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ….*

9 U.S.C. § 3 (emphasis added).

Cases interpreting this provision of the FAA state that, once the Court finds the parties' dispute referable to arbitration, it has no choice but to stay the action in response to a motion requesting the same. *Complaint of Hornbeck Offshore (1984) Corp.,* 981 F.2d 752, 754 (5th Cir. 1993) (Section 3 of the FAA is mandatory).

The U.S. Supreme Court has specifically held that a stay is required under Section 3 of the FAA when an arbitration provision is enforced against a non-signatory to the agreement. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009).

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO STAY PROCEEDING TO REQUIRE PLAINTIFF'S COMPLIANCE WITH § 501.98, FLA. STAT.

Defendant, Lorenzo Ford, additionally moves this Court to stay the proceeding to require Plaintiff to comply with statutory conditions precedent under Fla. Stat. § 501.98 which requires the Plaintiff to send a 30 days pre-suit demand letter before bring claims against Lorenzo Ford under FDUTPA. *See Fla. Stat. § 501.98.*

Chapter 501 includes specific provisions concerning the application of FDUTPA to motor vehicle dealers located in the State. *See Fla. Stat. § 501.975-98.* Section 501.98, Fla. Stat. states:

> "(1)   As a condition precedent to initiating any civil litigation, including arbitration, arising under this chapter against a motor vehicle dealer, which may also include its employees, agents, principals, sureties, and insurers, a claimant must give the dealer a written demand letter at least 30 days before initiating the litigation.
>
> (2)   The demand letter, which must be completed in good faith, must:
>
> > (a)   State the name, address, and telephone number of the claimant.
> > (b)   State the name and address of the dealer.
> > (c)   Describe the underlying facts of the claim, including a statement describing each item for which actual damages are claimed.
> > (d)   State the amount of damages, or, if not available, the claimant's best estimate of the amount of damages.
> > (e)   To the extent available to the claimant, be accompanied by all transaction or other documents upon which the claim is based."

Section 501.98(8), Fla. Stat., further requires:

> "(8) If a claimant initiates civil litigation, including arbitration, without first complying with this section, the court or arbitrator shall stay the action upon timely motion until the claimant complies with this section. Attorney fees and court or arbitration costs incurred by the claimant before compliance with this section are not recoverable under this chapter."

Count III of Plaintiff's Complaint brings individual claims under FDUTPA (Chapter 501) against Lorenzo Ford.  It is undisputed that Lorenzo Ford is a motor vehicle dealer. *Dkt. 1,* ¶ 13.  As a condition precedent to bringing claims against the motor vehicle dealer, Plaintiff

was required to provide a written demand letter at least 30 days before initiating litigation which complied with section 501.98(2), Fla. Stat.[7] *Williams v. John Hall Chevrolet, Inc.,* 2017 WL 11037517 (M.D. Fla. 2017)(staying claim and ordering Plaintiff to comply with conditions precedent under § 501.98, Fla. Stat.).  Plaintiff did not comply with this condition precedent.  *See Ex. 1: Decla. of M. Ranilla, ¶ 6.*

Section 501.98(8), Fla. Stat. makes clear that if a plaintiff initiates civil litigation without first complying with this requirement "the court… **shall** stay the action upon timely motion by the claimant until claimant complies with this section."  *Williams,* 2017 WL 11037517 at * 2 ("Thus, if a plaintiff initiates a civil action without complying with FDUTPA's conditions precedent, the court is required to stay the action until the plaintiff complies with this section.").

Given Plaintiff's failure comply with this requirement, this Court must stay the proceedings as to Count III until Plaintiff has complied with the conditions precedent for bringing litigation under FDUTPA against Lorenzo Ford.[8]

**WHEREFORE**, Defendant, Lorenzo Ford, by and through undersigned counsel, would respectfully request that this Court enter an Order granting Defendant's Motion to Compel Arbitration as to each of the claims by Plaintiff against Lorenzo Ford and enter an order Staying the Proceedings pending binding arbitration.  Defendant, also respectfully request that this Court enter an Order granting the Motion to Stay the proceeding as to Count III until Plaintiff complies with conditions precedent under Section 501.98, Fla. Stat., and/or direct such actions before initiating arbitration, as well as any other relief the Court deems proper. Lorenzo Ford reserves any and all defenses to the Complaint.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(3), counsel for Defendant has conferred with counsel for Plaintiff in a good faith effort to resolve the issues raised herein and has been unable to do

---

[7] This requirement is not insignificant, as § 501.98(4)(a), Fla. Stat. makes clear that "[a] claimant may not initiate civil litigation, including arbitration, against a dealer … for a claim arising under this chapter related to, or in connection with, the transaction or event described in the demand letter if, within 30 days after receipt of the demand letter, the dealer pays the claimant the amount sought in the demand letter, plus a surcharge of the lesser of $500 or 10 percent of the damages claimed." Thus, the pre-suit requirements allow motor vehicle dealers to resolve these matters early on so as to avoid unnecessary litigation.

[8] Count I of the Complaint brings FDUTPA claims against Ford Motor Company, not Lorenzo Ford.  In the event that Plaintiff asserts Count I's claims are also directed at Lorenzo Ford, this count would also need to be stayed.

so.

Dated: July 23, 2020

Respectfully submitted,

**BASS SOX MERCER**

_/s/  Jason T. Allen_____
Jason T. Allen (FBN 25659)
2822 Remington Green Circle
Tallahassee, FL 32303
Telephone (850) 878-6404
Facsimile (850) 942-4869
jallen@dealerlawyer.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2020, I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following at their e-mail address on file with the Court:

| | |
|---|---|
| Laurence M. Krutchick | Timothy G. Blood |
| LMK Legal | Paula R. Brown |
| 7450 SW 172nd Street | Jennifer L. MacPhearson |
| Palmetto Bay, FL 33157 | Blood Hurst & O'Readon, LLP |
| lmk@lmklegal.com | 501 West Broadway, Suite 1490 |
| | San Diego, CA 92101 |
| | tblood@bholaw.com |
| | pbrown@bholaw.com |
| | jmacphearson@bholaw.com |
| | |
| Michael T. Fraser | David Massey |
| The Fraser Law Firm, P.C. | Florida Bar Number: 086129 |
| 4120 Douglas Blvd., Suite 306-262 | David.massey@hoganlovells.com |
| Granite Bay, CA 95716 | Reginald Cuyler Jr. |
| mfraser@fraserlawfirm.net | Florida Bar Number: 0114062 |
| | reginald.cuyler@hoganlovells.com |
| | HOGAN LOVELLS US LLP 600 Brickell |
| | Avenue Miami, Florida 33131 Telephone: |
| | (305) 459-6500 Facsimile: (305) 459-6550 |

_/s/  Jason T. Allen_____
Jason T. Allen (FBN 25659)