UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 20-22485-CIV-COOKE/GOODMAN

STEVEN J. TYMAN,

      Plaintiff,

v.

FORD MOTOR COMPANY,

      Defendant.

_____/

**REPORT AND RECOMMENDATIONS ON [ECF NO. 25]
DEFENDANT FORD MOTOR COMPANY'S MOTION TO COMPEL
<u>ARBITRATION AND STAY PROCEEDINGS</u>**

Plaintiff Steven J. Tyman ("Plaintiff") filed a class action lawsuit against Defendant Ford Motor Co. ("Ford"), alleging various counts, including violation of Florida's Deceptive and Unfair Trade Practices Act, fraudulent concealment, negligence, and negligent misrepresentation, all stemming from Defendant's alleged failure to perform required Field Service Actions ("FSAs") on his vehicle. In its motion to compel arbitration and stay proceedings [ECF No. 25], Ford requests an order compelling Plaintiff to submit to binding arbitration all of his claims against Ford. It also requests that the Court stay proceedings in this lawsuit pending the completion of the arbitration.

Plaintiff filed an opposition in response to Ford's motion and Ford filed a reply in support of its motion. [ECF Nos. 29; 35]. United States District Court Judge Marcia G. Cooke referred the motion to the Undersigned for a Report and Recommendations. [ECF No. 48].

For the reasons outlined below, the Undersigned **respectfully recommends** that Judge Cooke **grant** Ford's motion to compel arbitration, which, if adopted, would result in a stay of the instant case.

## I.      Factual and Procedural Background

On October 20, 2019, Plaintiff leased a new 2020 model year Ford Explorer from Lorenzo Ford (the "Dealer"), an authorized Ford dealership in Homestead, Florida. [ECF No. 1, ¶ 34]. As part of that lease transaction, Plaintiff entered into two contracts with the Dealer in which Plaintiff agreed broadly to arbitrate all disputes arising from or relating to, among other things, the purchase or condition of his vehicle. Plaintiff executed (1) the Retail Lease Order and (2) the Florida Motor Vehicle Lease Agreement ("MVLA") (collectively the "Agreements"). [ECF No. 18-1]. The Retail Lease Order consummates the Plaintiff's agreement to lease the vehicle, and the MVLA concerns the financing of that lease. Both the Agreements contain arbitration provisions.

### a.   Alleged misrepresentations by the Dealer

In his complaint, Plaintiff details his interpretation of Ford's instructions to all dealers to perform FSAs. [ECF No 1, ¶¶ 17-19, 21, 22]. Plaintiff alleges that Ford offers a

172-point inspection that "requires dealers" to address "open FSAs" and executes agreements under which dealers "must perform" FSAs. *Id.* Plaintiff alleges that the Dealer represented that it had followed these instructions by requesting and receiving warranty reimbursement from Ford for the FSAs that the complaint alleges were not performed. *See id*. at ¶¶ 26, 27, 52, 54.

Plaintiff alleges that the Dealer represented that it had performed certain FSAs on Plaintiff's vehicle, when it supposedly had not. *Id*. at ¶¶ 35-37. Plaintiff further alleges that the Dealer intentionally and/or negligently misrepresented to him that it had performed certain FSAs before leasing him the vehicle. *Id*. at ¶¶ 2, 3, 35, 37, 53-55.

The Dealer was originally named as a party Defendant to this class action complaint. Nevertheless, the Dealer was dropped as a Defendant on August 4, 2020 when Plaintiff filed a Notice of Voluntary Dismissal without Prejudice of *Only* Defendant, Lorenzo Enterprises Corp. [ECF No. 21]. With the Dealer dropped from the case, Plaintiff seeks to hold Ford liable on the theory that it allegedly knew, yet failed to tell Plaintiff, that some dealers had not performed certain FSAs. *See id.* ¶¶ 4, 5, 60, 61.

## II.    Legal Standard

The Federal Arbitration Act ("FAA") governs the validity of an arbitration agreement. *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014) (citation omitted). The FAA "embodies a liberal federal policy favoring arbitration agreements." *Id.* (internal quotations omitted). The FAA provides that a written

agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* (internal quotations and citations omitted).

The party seeking to avoid arbitration bears the burden of establishing that the agreement in question should not be enforced. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000).

### III.   Analysis

#### a.   Ford's arguments in favor of arbitration

In its motion to compel arbitration and stay the proceedings, Ford argues that the Agreements executed by Plaintiff include arbitration provisions. [ECF No. 25, pp. 2-4]. Both Agreements signed by Plaintiff expressly provide for the arbitration of any disputes with the affiliates of the company that financed Plaintiff's lease, and Ford argues that it is an affiliate. The MVLA contract advises Plaintiff to "**READ THIS ARBITRATION PROVISION CAREFULLY AND IN ITS ENTIRETY**[.]" [ECF Nos. 18-1, p. 11; 25, p. 3 (emphasis in original)]. "Either you or Lessor/Finance Company/Holder ('us' or 'we') (each, a 'Party') may choose at any time, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration." *Id.*

The MVLA provides for the arbitration of disputes with, among others, "affiliates" of the Finance Company, such as Ford Motor Credit Company ("Ford Credit"). [ECF Nos. 18-1, pp. 5, 11; 25, p. 3]. Ford argues that Ford Credit is an indirect, wholly owned

subsidiary of Defendant Ford Motor Company. [ECF No. 25-1, ¶ 4 (Decl. of C. MacGillivray)].

Similarly, the Retail Lease Order also includes an arbitration provision. In bold, all capital letters, it advises that an "**ARBITRATION PROVISION**" followed and to "**PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS**[.]" [ECF Nos. 18-1, p. 18; 25, p. 4 (emphasis in original)]. "**EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL**." *Id.* The Retail Lease Order broadly defines the claims that are subject to arbitration as:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors, or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this Order and Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Order and Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

*Id.*

Next to Plaintiff's signature on the Retail Lease Order is the acknowledgment that he has "read each page of this Order and Agreement, including the arbitration provision on the reverse side, and agree to its terms." *Id.* at p. 16.

Both Agreements are governed by the FAA. *See, e.g., Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (underscoring the FAA's "emphatic directions" that arbitration agreements be enforced "according to their terms") (internal quotations omitted); *see also*

*John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA . . . a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute.").

### b.  Plaintiff's opposition to Ford's motion to compel arbitration

In his opposition to Ford's motion to compel arbitration [ECF No. 29], Plaintiff argues that the case should not be arbitrated and that he never agreed to arbitrate these claims against Ford. Plaintiff states that his lease and financing Agreements with the Dealer do not include Ford and have nothing to do with Ford's concealment of or failure to notify owners and lessees of the unrepaired FSAs. He argues that Ford is not a signatory to either the Dealer's MVLA or the Dealer's Retail Lease Order and that Ford fails to demonstrate it is a third-party beneficiary of the Agreements.

Moreover, Plaintiff argues that Ford does not establish that the equitable estoppel doctrine applies (to allow Ford to otherwise enforce the Arbitration Agreements) because Plaintiff's claims against Ford do not rely on the Agreements and because Ford's wrongful conduct is separate from any wrongful conduct by Dealer.

### c.  Ford has demonstrated that it is entitled to enforce the arbitration provisions in the Agreements

 "In reviewing a motion to compel arbitration, a district court must consider three factors: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived." *Integrated Sec. Servs. v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1324 (S.D. Fla. 2009). Here, Ford argues that there are

6

valid arbitration Agreements, Ford is entitled to enforce the arbitration Agreements, the Agreements cover Plaintiff's claims against Ford, and Ford has not waived its right to arbitrate.

Under Florida law, the two Agreements at issue are binding agreements. When leasing his vehicle, Plaintiff signed both the MVLA and the Retail Lease Order, [ECF Nos. 1 ¶ 34; 18-1 at 11, 16]. Plaintiff is therefore presumed to know the contents of both Agreements, including the arbitration provisions they contain. *See Benoay v. E.F. Hutton & Co., Inc.*, 699 F. Supp. 1523, 1529 (S.D. Fla. 1988) ("A party who signs an instrument is presumed to know its contents."); *Falcon v. CarMax Auto Superstores, Inc.*, No. 18-20268-CV, 2018 WL 3699336, at *4 (S.D. Fla. May 18, 2018) (finding that plaintiffs who executed a motor vehicle sale contract could not avoid arbitration by alleging they did not read or understand the provision).

Although Ford is not a signatory to the Agreements, courts recognize that, under a variety of circumstances, non-signatories may compel arbitration, including (1) based on the equitable estoppel doctrine and (2) when the non-signatory is referenced in, or is a third party beneficiary to, the agreement to arbitrate. *See, e.g.*, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (internal quotation and citation omitted) ("[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through . . . third party beneficiary theories. . . and estoppel.").

A non-signatory may rely on equitable estoppel principles to compel a signatory to arbitrate a dispute in at least two circumstances: (1) when a plaintiff's claims against the non-signatory are "'inextricably intertwined' with his claims against the contract signatory" and (2) "when the signatory's claim against a non-signatory . . . 'presumes the existence of the agreement.'" *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1401, 1403 (S.D. Fla. 2014).

While Plaintiff recently dismissed the Dealer as a defendant in the case, the allegations in the complaint against the Dealer and Ford remain the same. As explained below, the Undersigned finds that equitable estoppel applies because Plaintiff's claims flow from the two Agreements containing arbitration provisions. In his complaint, Plaintiff alleges that he leased a Ford vehicle from the Dealer pursuant to the Agreements. [ECF No. 1, ¶ 34]. Ford's allegedly actionable conduct occurred when these Agreements were signed. *See id.* ¶¶ 1, 28, 53.

Courts have allowed a non-signatory to compel arbitration where its potential liability derives from the signatory's conduct and the claims against the non-signatory are based on the same operative facts and are inherently inseparable from the claims asserted against the signatory. *See Wilhelm v. Thor Motor Coach, Inc.*, No. CV 17-1148, 2017 WL 2426007, at *6 (E.D. La. June 5, 2017) (internal quotation and citation omitted) ("This Court previously explained that a non-signatory may compel arbitration and stay court proceedings when the non[-]signatory's potential liability derives from the signatory's

conduct, and the claims against the non-signatory are based on the same operative facts and are inherently inseparable from the claims asserted against the signatory. The idea is that litigation against the non-signatory would adversely affect the signatory's right to arbitration."); *Precision Funding Grp., LLC v. Nat'l Fid. Mortg.*, No. CIV. 12-5054 RMB/JS, 2013 WL 2404151, at *7 (D.N.J. May 31, 2013) ("[V]iability of [the plaintiff's] claims against [the non-signatory] are exclusively based on the actions of" the signatory); *Id.* ("[C]ourts have bound a signatory to arbitrate with a non-signatory at the non-signatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations."); *Johnston v. Arrow Fin. Servs., LLC*, No. 06 C 0013, 2006 WL 2710663, at *4 (N.D. Ill. Sept. 15, 2006) (granting defendant's motion to compel arbitration and staying the case where the plaintiff's claim was "based on the conduct of . . . a signatory").

Ford falls within the scope of the arbitration provision in the MVLA. The MVLA provides for arbitration of: "Claims between you and us, our employees, agents, successors, assigns, subsidiaries, or affiliates." [ECF No. 18-1, p. 11]. The word "us" is defined in the MVLA to include the "Finance Company." *Id*. In this lease for Plaintiff's vehicle, the Finance Company is "Ford Motor Credit Company." *Id.* at p. 5. Ford Credit is an indirect, wholly owned subsidiary of Defendant Ford, and thus an affiliate of Ford. [ECF No. 25-1 ¶ 4]. Ford is the ultimate parent company of Ford Credit and this

relationship qualifies Ford as an "affiliate" under the MVLA. *See* Black's Law Dictionary (10th ed. 2014) (defining the word "affiliate" as including "a subsidiary, parent, or sibling corporation").

The MVLA notified Plaintiff that the arbitration provision applied to <u>affiliates</u> of Ford Credit. The term "Finance Company" appears in the second full line of text of the arbitration provision and is defined as Ford Credit on the very first page of the MVLA. [ECF No. 18-1, pp. 5, 11]. Plaintiff does not provide sufficient reason for why the Undersigned should ignore the word "affiliates."

Moreover, parent companies have frequently compelled arbitration where the parent company did not sign the agreements but qualified as an "affiliate" referenced in the arbitration provisions. *See, e.g., Gorny v. Wayfair Inc.*, No. 18 C 8259, 2019 WL 2409595, at *6 (N.D. Ill. June 7, 2019) (finding that "parent company" was included "in the arbitration clause" that applied to "affiliates") ("Gorny argues that any arbitration agreement exists only between him and Wayfair LLC, and that Wayfair Inc., Wayfair LLC's parent company, was not a party to the agreement. As a result, Gorny contends, his claims against Wayfair Inc. are not covered by the agreement to arbitrate. Wayfair counters that . . . Wayfair LLC included claims against its parent company in the arbitration clause by defining the clause as applying to all disputes with 'Wayfair, its agents, employees, officers, directors, principals, successors, assigns, subsidiaries or affiliates . . . Wayfair is clearly correct. Wayfair Inc. is Wayfair LLC's parent company and

is therefore covered by the arbitration agreement. It may thus enforce the arbitration provision in relation to the claims against it.").

The *Gorny* Court relied on the plain language of the arbitration provisions, without resorting to a third-party beneficiary analysis, granting the motion to compel arbitration by a non-signatory parent because the provision's terms were "broad enough to capture the claims against" it as an affiliate. *Id.*

Similarly, in *Mounts v. Midland Funding LLC*, the court granted defendant's motion to compel arbitration, finding that, "under the plain terms of the agreements, plaintiffs agreed to submit any dispute against Midland Funding's affiliates to arbitration." 257 F. Supp. 3d 930, 940 (E.D. Tenn. 2017) ("In contrast, as defendants point out, Black's Law Dictionary defines 'affiliate' as '[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation.' . . . Based on this definition and the opinions of several other courts, it appears that Midland Credit qualifies as an affiliate of Midland Funding and may, therefore, enforce the arbitration agreements even if it is not a party to the agreements. . . . As such, the Court finds that, because Midland Credit is Midland Funding's 'affiliate,' Midland Credit may properly invoke the arbitration provisions.").

Plaintiff seeks to distinguish these cases primarily because both a signatory and non-signatory were defendants. [ECF No. 29, p. 13]. Nevertheless, when this case was originally filed, Ford and the Dealer were both named parties. Even now, with the Dealer

dropped from the case, the Dealer's alleged misconduct remains the foundation of Plaintiff's claims against Ford.

Further, in *Mey v. DIRECTV, LLC*, 971 F.3d 284, 289-90 (4th Cir. 2020), the Court allowed a non-signatory defendant to compel arbitration because the arbitration provision at issue explicitly referenced "affiliates" and the defendant was an affiliate of a signatory. *Id.* at *3-5 (vacating the district court's order denying motion to compel arbitration and concluding that the term "affiliates" allowed the defendant to compel arbitration, even though it only became an affiliate "after the agreement was signed"). The *Mey* Court refused to restrict the ordinary meaning of the word "affiliates." The court explained its reasoning:

> Mey next contends that, even if she consented to arbitration, she did not form an agreement to arbitrate with DIRECTV. . . DIRECTV asserts that it is currently an affiliate of AT & T Mobility, and was an affiliate at the time of the events underlying this dispute, therefore it is included in the arbitration agreement's references to 'AT & T' and 'us.' Mey responds that the term 'affiliate' should be limited to affiliates of AT & T Mobility existing at the time the arbitration agreement was executed. Because DIRECTV and AT & T Mobility became affiliated only after Mey agreed to arbitrate, she argues that the term cannot cover DIRECTV. As an initial matter, we conclude—as the district court appears to have acknowledged and Mey does not dispute—that DIRECTV is currently an affiliate of AT & T Mobility. The contract does not define the term 'affiliate,' so we look to its ordinary meaning . . . An affiliate is commonly understood as 'a company effectively controlled by another or associated with others under common ownership or control.' Affiliate, Webster's Third New International Dictionary 35 (2002) . . . Since 2015, AT & T, Inc. has owned both AT & T Mobility and DIRECTV through other corporate entities, making them affiliates under common ownership or control. Although Mey considers the relationship attenuated, she does not contest that DIRECTV is currently an affiliate of AT & T Mobility and was an affiliate at the time of the underlying

events by virtue of their common ownership. Mey does not advance any reason we should restrict the ordinary meaning of 'affiliates' here, nor do we find any. The agreement contains no explicit limitation on the term.

*Id.*

Plaintiff tries to distinguish *Mey* on the basis that the decision depended on the particular relationship between the plaintiff and the non-signatory defendant; however, in *Mey*, the court allowed a non-signatory defendant to compel arbitration because the arbitration provision at issue explicitly referenced "affiliates," and the defendant was an affiliate of a signatory.

Moreover, whether because of the third-party beneficiary doctrine or otherwise, parent and affiliate companies can enforce arbitration agreements they did not sign where they fall within the scope of the provisions at issue. *See Oravetz v. Halliburton Co.*, No. 07-20285-CIV, 2007 WL 7067475, at *4 (S.D. Fla. July 24, 2007) (allowing parent company to invoke an arbitration provision that described it and other corporate affiliates as "third party beneficiaries").

The Undersigned finds that Plaintiff is incorrect that the MVLA must "mention" Ford by name. [ECF No. 29, p. 12]; *Pleitez v. BMW of N. Am.*, LLC, No. CV 19-10422 PA (JCx), 2020 WL 2084954, at *3 (C.D. Cal. Feb. 27, 2020) (finding that reference to "affiliates" of an automotive finance company was sufficient); *Id.* ("As have other Courts in the Central District that have construed the arbitration provision's extension to 'affiliates' of the signatories, this Court concludes that it is undisputed that BMW NA is an affiliate of

BMW FS, and as a result of it being an 'affiliate,' can enforce the arbitration provision as a third-party beneficiary.").

Courts have repeatedly allowed non-signatories to enforce arbitration provisions nearly identical to the MVLA's provision. *See, e.g.*, *Brown v. Sklar-Markind*, No. CIV.A. 14-0266, 2014 WL 5803135, at *1, *13 (W.D. Pa. Nov. 7, 2014) (granting motion to compel arbitration and finding that the "agreement is enforceable . . . as to claims involving" the signatories' "affiliates").

In *Brown*, the arbitration provision in the sales contract at issue was broad and encompassing, covering "any Claim related to this contract" including but not limited to "Claims in contract, tort, regulatory or otherwise; . . . Claims between you and us, your/our employees, agents, successors, assigns, subsidiaries, or affiliates; [and] 4) Claims arising out of or relating to . . . this contract, or any resulting transaction or relationship, including that with the dealer, or any such relationship with third parties who do not sign this contract." *Id.* at *1.

The *Brown* Court found that even though Defendants were non-signatories to the sales contract, they were not prevented from enforcing the arbitration provision. The court reasoned that although plaintiff argued that defendants, as third-party non-signatories, cannot enforce the arbitration provision, the sales contract expressly provides otherwise, stating that it applies to "any resulting transaction or relationship, including

that with the dealer, or any result transaction with third parties who do not sign this contract." *Id.*

Additionally, the court found that the debt collection activity at issue in the case arose from and were dependent upon the sales contract containing the arbitration agreement. *Id.* at 13; *see also Griswold v. Coventry First LLC*, 762 F.3d 264, 272 (3d Cir. 2014) ("[C]ourts have bound a signatory to arbitrate with a non-signatory at the nonsignatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intimately founded in and intertwined with the underlying contract obligations.").

"[C]laims against a nonsignatory to a contract containing an arbitration provision are founded on, and are intertwined with, the facts surrounding the underlying contract, (1) where the plaintiff asserts breach of duty imposed or entailed by that contract, or (2) where the plaintiff alleges conspiracy or agency between a nonsignatory and a signatory to a contract containing an arbitration clause." *See Montgomery Ford Lincoln Mercury, Inc. v. Hall*, 999 So. 2d 964, 968, 971 (Ala. Civ. App. 2008) (finding arbitration agreement to be enforceable under doctrine of equitable estoppel, and explaining that "plaintiff may be compelled to arbitrate his or her claims against a nonsignatory to a contract containing an arbitration provision if the claims are founded on, and are intertwined with, the facts surrounding the underlying contract that contains the arbitration clause").

The Undersigned finds that Ford, as a non-signatory to the Agreements which contain the arbitration provisions, has demonstrated that the facts alleged in the complaint are intertwined with the underlying Agreements between Plaintiff and the Dealer. The arbitration provisions in this case are broad, encompassing "[a]ny claim or dispute" arising out of or relating to the Agreements, as well as transactions or relationships "including any such relationship with third parties who do not sign" the Agreements. [ECF No. 18-1, pp. 11, 18]. Plaintiff's claims are all predicated upon Ford's alleged failure to ensure that its Dealers perform the required FSAs before leasing the vehicle the Plaintiff in accordance with the Agreements. Thus, all of Plaintiff's claims arise out of or relate to the "purchase or condition of [Plaintiff's] Vehicle" and fall within the arbitration provision.

### d.  The cases cited by Plaintiff are distinguishable.

Plaintiff cites to *Vincent v. BMW of N. Am.*, No. CV 19-6439, 2019 U.S. Dist. LEXIS 227679, at *16 (C.D. Cal. Nov. 26, 2019), where the Court declined to compel arbitration and held that "the fact that Plaintiff's claims would not exist but for his purchase of the vehicle does not mean that his claims rely on the Purchase Agreement," rather "Defendant's relationship with Plaintiff was formed by virtue of Plaintiff's purchase of the vehicle, not by virtue of any terms in the Purchase Agreement." Nevertheless, *Vincent* is distinguishable from the instant case as the arbitration provision there did not include "affiliates" within its scope.

16

Likewise, in *Schulz v. BMW of N. Am.*, LLC, No. 5:20-CV-01697-NC, 2020 WL 4012745 (N.D. Cal. July 15, 2020), the Court rejected a similar equitable estoppel argument as Ford's, holding that while "the provision encompasses disputes that arise out of or relate to the condition of the vehicle, it did not extend to disputes against third parties, especially because the signatories had to elect to exercise the right. Nevertheless, the *Schulz* Court recognized that courts have compelled arbitration "when the dealership assigns a lease to a financial service company affiliated with the manufacturer[,]" but explained that the specific provision in *Schulz* did not reference "affiliates." *Id.* at *3 n.1.

Plaintiff also cited to *Jurosky v. BMW of N. Am.*, 441 F.Supp.3d 963 (S.D. Cal. 2020), where the court denied BMW's motion to compel arbitration, holding that "[e]ven if Plaintiff's complaint referenced the purchase agreement, in order to be intertwined with the purchase agreement, Plaintiff must allege a violation of a 'duty, obligation, term or condition' imposed by the purchase agreement." *Id.* at 970. Ford points out that *Jurosky*'s arbitration provision does not contain the word "affiliates." The arbitration agreement states:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to . . . purchase or condition of this vehicle, the contact [sic] or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

*Id.* at 967-68.

*Jurosky* was also distinguished in *Rizvi v. BMW of N. Am. LLC*, No. 5:20-CV-00229-EJD, 2020 WL 2992859, at *3 (N.D. Cal. June 4, 2020). In *Rizvi* (where the court granted defendant's motion to compel arbitration), the court determined that defendant's reliance on *Jurosky* was "misplaced." *Id.* "Significantly, the arbitration provision in *Jurosky* and *Vincent* does not include within its scope 'affiliates' of the signatory dealer, whereas the arbitration provision in this case does. The inclusion of 'affiliates' means that the arbitration provision in this case is broader than the one in *Jurosky* and *Vincent* such that BMW NA may enforce the provision against Rizvi." *Id.*

Finally, Plaintiff's citation to *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.* is also distinguishable. No. 18-ML-02814 AB (FFMx), 2020 WL 3637631, at *4-5 (C.D. Cal. July 2, 2020). The Court in *In re Ford Motor Co.* denied defendant's motion to compel arbitration, finding that there were "no allegations of evidence that the alleged agent – the Dealership – entered into the Lease on behalf of the alleged principal – Ford." *Id.* This case is distinguishable because, in our case, Ford has argued that the claims at issue affected the purchase price set by the underlying Agreements containing the arbitration provisions.

## IV.    Conclusion

The Undersigned finds that the Agreements' arbitration provisions apply to Plaintiff's claims against Ford. For the reasons described above, the Undersigned

**respectfully recommends** that Ford's motion to compel arbitration be **granted** and the case be stayed pending the arbitration of the case.

## V.        Objections

The parties will have fourteen (14) calendar days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within fourteen (14) calendar days of the objection. Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED i**n Chambers, in Miami, Florida, on January 20, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All counsel of record